Good morning. All right. This morning we have and I'm going to pronounce this. You can correct me when you stand up here, but Juffre or Jaffrey is a Juffre. Okay. Versus North American Spine number 24-2073. Begin whenever you're ready. May I please record your honors. I reserve two minutes for rebuttal. I am essentially going to try and start with what I might have finished otherwise, which is the district court making its ruling in this particular matter essentially ignored that the facility itself violated its very own standards. It focused upon whether or not specific statements were in my expert's report and ignored that the facility's own personnel indicated that they had a process that they didn't in fact follow. The facts are relatively simple. How did Mr. Hawkins' opinion evaluate the credentialing process at Hackensack Surgery Center? In his report, he sets forth it's a three-part criteria and he says that three-part or step process includes evaluation of the training and experience of the individual as well as checking the credentials of the person. As he put it during his deposition, he said that you have to look at the question of primary source verification and that means you have to do more than just check on their resume. Now, is that HSC's procedure or is that the standard procedure? He established that this is one of the standards of the American Association of Ambulatory Care Centers. And CMS I think as well. AAHC, I think it is. And he established the fact that that in and of itself provides that you have to make sure that the individual has the credentials and qualifications to do the was a physiatrist. He was not a surgeon. He was effectively performing a form of spinal surgery. This epiduroscope... I mean, physiatrists, and I've had some experience in a way back machine representing using a physiatrist as a witness in a case. Yes. More than once. And my understanding is that they can do certain types of procedures that are not deemed to be surgical. And the question is, as to what was done here with Mr. Giuffre, was that surgical or was that the type of procedure that is not deemed to be surgical? Well, Your Honor, we argued that it in fact is surgical. We presented a neurosurgeon, Dr. Rosner, who indicated that this is a form of spinal surgery. We also presented at the time a Dr. Malanga, who has since passed as a physiatrist indicating that this is outside the scope of the practice of physical medicine and rehabilitation, otherwise known as physiatry. In this particular instance, we're not talking about somebody doing an epidural. We're not talking about somebody doing a spinal injection. We're talking about somebody making an incision at the anal verge and then taking an epiduroscope. In this particular instance, Mark had done the name gyroscope and passing it retrograde up the spinal canal to ultimately laser an area of the disc material in question. In addition- But had not Dr. Noto been trained in that procedure? Well, that's the part that becomes more difficult here. The only thing that was submitted for Dr. Noto's training was a pair of certificates that were executed by a Dr. Kenneth Allo, who was the medical director of the North American Spine Group that marketed this procedure. Dr. Allo at deposition testified that he did not sign either of the certificates that were relied upon, nor did he authorize the use of his signature. Therefore, had the credentialing process been followed fully, they would have identified that those certificates were, in fact, not establishing full qualification for him. In addition, Dr. Noto testified that he did not have the qualifications or credentials to perform the same procedure in any hospital. Let me ask a question about the applicable standard of review. As I understand it, we have to review this for an abuse of discretion, and we don't reverse unless there's a definite and firm conviction that an error occurred. Let's assume I agree with you, right? If I was a district court judge, I would have admitted this. Why does this rise to the level of an abuse of discretion? It rises to a level of abuse of discretion because the district court judge focused purely upon the contents of the report. The district court judge essentially refused to consider anything that was said at deposition. Anytime I raised any argument about what was argued at deposition, district court would say, where is that in his report? Well, can you use the deposition? Can the deposition supplement the report, or did you have to do an amended report? No, the deposition can always supplement the report. This court has itself, or I should say, this circuit has said that deposition testimony should be considered in the context of whether or not it is a net opinion or not a net opinion, whether it's admissible or it's not admissible. In this instance, the deposition of Dr. Hawkins, Mr. Hawkins, I should say, would have provided that information, but the district court was focused purely on where is that in his report. He did cite standards in his report. The court nonetheless pointed out that one of the standards he cited was same chapter and admittedly the wrong citation. He corrected that at deposition. And the reality of it is, is for this type of standalone ambulatory center, it is important that there be a qualification review that sees to it that anybody who's going to perform these procedures does not err as in here. In fact, in this instance, one of the interesting, and I'll call it, it's a somewhat side piece of information, the individual who did the neuromonitoring, the neurologist, Dr. Hyde, had said that if he wasn't a surgeon, he would have never agreed to do the neuromonitoring because this is spine surgery. And in fact, the outcome is exactly what happens when spine surgery goes awry. Mr. Giffray has a complex regional pain syndrome that impacts his ability to walk. He has a dropped foot, and this is permanent all because of the fact that this particular doctor who is not a spinal procedure in a hospital performed this particular type of what they like to call minimally invasive spine procedure upon him. Anything that's doing what this particular procedure does and the video that is seen of it, it is clearly surgery. It is not a procedure that would normally be conducted by a non-surgeon. Under the circumstances of this particular matter, what the court did was place an overly restrictive view of the rules to my client that essentially deprived him of his day in court against the facility. We did, in fact, continue the case against Dr. Noda. The case against Dr. Noda was resolved. It was not tried. However, reasonably speaking, he would never have been able to perform this procedure if Hackensack Surgery Center had not given him the potential to do so. Add to it, this was a facility that he had an interest in. When Bernadita Garcia, as the individual doing the credential review, undertook her work, it's pretty clear to see that what she did was look at his CV, recognize that he was one of the members, and give him the credential to perform something that the hospital right down the road would not let him do. Under the circumstances, yes, I would say it is an abuse of discretion. It is when one won't look at the whole picture. In addition, the district court made the determination on a Daubert basis. Because the court made it on a Daubert basis, I raised that the district court then needed to hold a Daubert hearing. Mr. Hawkins would have come to court, would have explained his opinions, and the court would have had an opportunity to then make a determination whether or not the whole of his opinions were sufficient to support the case. Interestingly, the court itself, in the course of the argument, literally said, I see that there's a theory for this, but I don't see it in his report. And that was the principal basis of the district court's determination. We didn't get a written opinion, but in the argument itself, that's where the noted. Yes. I guess, dumb question, but why didn't the report get into why credentialing of Dr. Noto was imperative in this particular case? I would suggest that it did. It did set forth the three-step process and what needs to be followed and how the facility did not follow it. And in fact, pointed to the lack of proper three-step process evaluation. I will candidly tell you, I was taken by surprise by the court's ruling because nothing about this report sung in any way to me as anything less than a typical report I would see of such a nature in a medical malpractice case. Plus the deposition filled in the gaps and the court not being willing to consider what was done within those gaps really from my standpoint was where I was taken by surprise. Having said that, the court in looking at it even noted that there was a theory here that could hold them in, but the report in the court's view didn't reflect it. And that brings me back to where is the abuse of discretion? Abuse of discretion is in overly restrictive interpretation of the rule by saying that the report had to functionally be his testimony. It functionally put a handcuff on him to then fill in whatever necessarily needed to be filled in at deposition. I would argue the report is supposed to provide an outline. It did. The deposition was taken. It filled in. Therefore, reasonably speaking, without any doubt, this particular theory, this particular expert should have been permitted. In addition, the court would only focus on Mr. Hawkins' opinion and having barred it, then granted the summary judgment. The court would not look at all at what was being provided by Dr. Rosner, the neurosurgeon, indicating that he, too, serves on the credentialing committee at his hospital, is familiar with the process, and that this particular credentialing was clearly lacking because this, again, is a surgical procedure. Your Honor asked the question about aren't there some procedures that individual physiatrists can perform? I'd say yes. I'd also say that's why we had an expert who said this is not one of them. That's why we had a second expert who said this is neurosurgery. That's why we had two experts, in effect, that said this particular facility needed to do a proper credentialing in order for this to be permitted there. If he was not given the credentials, if Dr. Noda was not permitted to have operated in this facility, this surgery could not have proceeded because the doctor didn't have the credential or the qualification to do it, or the privilege, I should say, to do it anywhere else. As such, in this instance, with what I would call an ever-expanding number of specialties who are moving their way into this, anesthesiologists, the physiatrists, where this should be permitted to exist and not becomes important that it be determined that these standalone facilities have to do a proper credentialing. Trial court didn't give us that opportunity to try that issue, and that's where I think the abuse occurs is that this is a matter that should be tried. The experts are there, and the theory is there, and certainly it is something that I think upon trial would be successful on behalf of my client. I see my time is up. Is there any questions? No more questions. Thank you, counsel. Thank you. Good morning, Your Honor. May it please the court. Nothing that occurred below by either Judge Orleo or Judge Padin on motion for reconsideration was abuse of discretion. In fact, it was a sound use of their discretion. What is the credentialing process at Packensack Surgery Center? Well, first of all, plaintiff's counsel never explored that. What is it? It is they gather an application. That application sets forth through a CV and through other information what the training and credentials, not credentials, training and the doctor. They then investigate the training and other items that are on the CV and the application, and they verify it. And then as the years go on, if the doctor seeks additional privileges, they ask for that information. What counsel ignored is that Dr. Noto was originally credentialed in 2011. This surgery occurred in 2014, and so the plaintiff never explored how Dr. Noto was certified and what the process was in 2011. He never explored what the certification process was before the date of the surgery. Let me ask you a question. All right. Yes. Assume we agree with you that the report doesn't explore what HSC's procedure was. I read the report to say, to tell me what the standards require under CMS and AAHS, right? And as I read that, it tells me a couple of things that you need a completion of a postgraduate residency or fellowship in spine surgery. You need ortho or neuro. That the standards of care require that a person be able to perform an open version of the surgery. And then I don't think there's any dispute that Dr. Noto didn't have a postgraduate residency or fellowship in spine surgery. So as I read the report, I take a person performing this has to have a certain education. They have to have a license to perform the open version. No dispute that Dr. Noto didn't have either of those. Why do I need to know what HSC's credentialing process was? If someone, if an expert, as far as I know, you all have not challenged that he, that his, that the, that Mr. Hawkins has the requisite credentials to speak to credentialing. If he's told me what the standard of care is, and there's no question that it's not met, why isn't that admitted? Well, there is, well, first of all, I disagree. There is a question as to whether or not it was met. And the, the, in a credentialing case, it's the process that needs to be analyzed. And it's facts that need to be analyzed, not the end, not just a, an end result where a doc, where this expert makes a conclusion and doesn't, and doesn't do the thing. I, I also respectfully disagree with your, your honor's comment that Dr. Noto did not have any post-medical school training in surgery, spine surgery, or joint surgery. He, he did. He had a postgraduate, are you saying that he had a postgraduate residency or fellowship in spine surgery? He had a fellowship in joint and spine where he participated in this type of surgery and in invasive back surgery. He also had a post-medical school fellowship in orthopedic surgery, which is on his CV. The plaintiff's expert declared that that didn't exist because when the report was written, he didn't review Dr. Noto's CV. He didn't review Dr. Noto's testimony about his post-medical school training in back surgery. So he made two opinions in his report. One was based on a faulty assumption that a New Jersey administrative code regulation applied to Hackensack Surgical Center, which it did not. And he eventually admitted that. And the other one was that he lacked credentials to do this surgery, but he made that opinion and he rendered that opinion without ever looking at the CV of Dr. Noto, without ever looking at the deposition testimony of Dr. Noto. But Dr. Noto is certified as a physiatrist. Physiatrists normally don't do surgery. This looks, at least superficially, like it's surgery. How do you get credentialed as a non-surgeon to do surgery? Well, he's credentialed to do invasive procedures, minimally invasive procedures, and other invasive procedures. And this procedure is minimally invasive? Well, Dr. Allo, who counsel referenced, who's certification of completion. And it wasn't just certifications of completion. Dr. Noto went to Texas and assisted Dr. Allo in dozens of surgeries of this type. Dr. Allo also came to New Jersey and the records show that he was present for at least 10 surgeries where he proctored Dr. Noto in this surgery. Dr. Allo is not a neurosurgeon. Dr. Allo is not an orthopedic surgeon. Dr. Allo is a pain management doctor who is certified to do this surgery and has performed disectomies with epitoscopes. I think he testified his position close to 30,000 times. Is there a representative of the company that sells that that was consulted in connection with this particular surgery? My understanding is that oftentimes a number of orthopedic surgeons, for example, don't want to have a surgery done without the rep from the company being in the operating room. I understand what you're on. And that often happens in fusion surgery where hardware is being put in. I don't know the answer to that. It might be in the records, but I don't know the answer to that. But there was no company rep that was in this particular... I cannot answer that yes or no. I don't know. But if you look at what Judge Arlio, her analysis, and it's... I don't want to repeat each item that she said word for word. And it starts at JA45 and it runs to 51. And then you read the analysis, the detailed analysis that Judge Padeen did upon a thorough review of the record. What is missing here is the following. Under Dalbert, under the net opinion rule, a doctor or an expert simply can't say, here's the standard that I think applies. And here's my conclusion. They have to connect it in between. And what they have to say, and what Mr. Hawkins did not say in this case, they have to say, here's what the procedure at Hackensack Surgical Center was. Here's how they implemented the procedure. Here's where it falls short. Here's where they did the right thing or they didn't do the right thing. Here's where they or did not do all these actions to review doctor notice credentials and to give him privileges to do this. Mr. Hawkins did none of that. When you read Judge Arlio's opinion or the transcript of the oral argument, she says to Mr. Britcher, and she reviewed the deposition, and it's clear she reviewed the deposition. It's clear that Judge Padeen also reviewed the deposition and reviewed the transcript of the argument. She said, you have to say the what, the why, and the wherefore. And your expert doesn't do that. He may set this national standard, but he doesn't even say in the context of this case, how what he says, A-A-A-H-C-C-H, I have the same problem, your honor, or CMS sets forth as a standard. He doesn't even say that those are actually standard of care that need to be followed. He doesn't say this is what you have to do to meet that standard of care. We cite, it's a New Jersey case, but we cite a case in our brief where an expert cited a national standard of a fire code standard and then jumped to a conclusion that something was improperly installed. And the court there said, you didn't do the where, the what, and the wherefore. You didn't explain it, and you can't just come in and issue a conclusion. And that's where Mr. Hawking's argument here is that the administrative procedures needed to give somebody credentialing were not followed. And therefore, HSC should be liable for giving credentialing to someone that didn't deserve it. That's the central theme. Okay. And here's the problem with that. We don't know that for a fact, and I'll tell you why. Plaintiff took the deposition of the then existing credentialing person. She didn't start at Hackensack Surgery Center until 2015. Plaintiff's questioning was always in the present. It was always, what does Hackensack Surgical Center do? It wasn't, what did you do in 2011 when Dr. Noto was credentialed? What did you do in 12, 13, up until the time of the 2014 surgery? So we don't have a record. And this is the point. Mr. Hawkins doesn't have a factual record to base his conclusion, which is a speculation, bare, net opinion conclusion that the procedures at Hackensack Medical Center in 2011, 12, and 13 somehow fell short. There's no facts in the record to support that. And that's what Judge Aurelio in her questioning of counsel and statement at the motion stage. And it's what Judge Padin in her eight page or 10 page written opinion says is lacking. It's the, what happened? Why did it happen? And wherefore, meaning how does that fall short of a standard of care? You just can't go from saying, I think this is a standard of care and then jumping to a conclusion. If the doctors should not have been given credentialing, then what happens? Well, I guess what it would be that Mr. Hawkins can testify, but if the doctor doesn't get credentialing, can the doctor operate in any way, shape, or form if it's deemed to be it depends on what the institution defines this procedure as. So if the institution defines this procedure as something that a pain management doctor can do, because especially Dr. Noto, who was trained during his two fellowships in back and spine surgery, can do, then yes, he can be credentialed. Even though that's not normally what a physiatrist would do. Well, as I said, Dr. L has done 30,000 of them. So I think in this day and age, physiatrists do invasive procedures. Anesthesiologists do invasive procedures. Non-surgeons, and I don't like to do air quotes, but I just did them. Non-surgeons do invasive procedures and they do invasive spine procedures. So merely Mr. Britcher saying, well, he's not a surgeon and we think that surgeons don't do this type of surgery. That's not the end of the analysis. The end of the analysis is why does Hackensack Surgery Center credential this surgery with this doctor? And Mr. Hawkins doesn't know the answer to that. And he just jumps because he says, he's not a surgeon in my opinion, therefore he shouldn't be credentialed. You can't do it that way. You have to go, this is what happened. This is what they considered. This is what the medical director signed off on. And why did the medical director sign off on that? He never asked for the medical director and he never deposed them. The chief of staff, why did he sign off on it? He never took that deposition. We don't know those steps in 2011, 12, and 13 before this operation. Your friend on the other side, your friend on the other side argues, well, part of the reason that we don't have that is because the court's focus was too narrow. If the court had looked at the deposition, some of these holes would have been filled in. The expert report just had to outline it and the holes could have been filled in with the deposition or it should have filled in at a hearing. What's your response to that? My response is the deposition didn't fill in any holes and Mr. Britcher, if there were holes, could have asked questions of his own expert. This expert did not fill in the holes. The judge did read the deposition transcript. Judge Padin did read the deposition transcript and it didn't help Mr. Britcher. Mr. Britcher, and I'm running out of time, but he did reference two doctors. Neither of those doctors, well, they both testified that they weren't expressing opinions against Hackensack Surgery Center. They weren't expressing opinions on credentialing and more importantly, Mr. Hawkins testified that he didn't rely on those. Their reports were not in the materials that he reviewed and nothing in his report or deposition testimony references the people after the fact. In terms of the Daubert, if I'm allowed to go over, in terms of the Daubert question, Mr. Britcher didn't ask for a Daubert hearing before Judge Arleo. It's in the sound discretion, I'm not telling your honors anything you don't already know, but it's in the sound discretion of the district court. If you have a report, you have a deposition, you have extensive briefing, and in this case, they had multiple briefings because the same arguments were made by different defendants on the same day and had a sufficient record to make this ruling without a Daubert hearing. He asked for a Daubert hearing the first time on reconsideration and Judge Padin said one is not necessary for the counsel. Thank you. Mr. Hawkins' qualifications were never challenged. Mr. Hawkins is clearly qualified to offer an opinion in this regard. Dr. Allo's certification that was spoken of, Dr. Allo is a pain management anesthesiologist, he is not a surgeon or even a physiatrist, and North American Spine arranged the entire thing, meaning Dr. Noto's participation, Hackensack Surgery Center's participation, Dr. High's participation, and the neuromonitoring personnel within the room. In the course of his report, that is 15 pages including his CV, Mr. Hawkins includes a discussion of each of the different AAHC and also the CMS criteria that determine why the ambulatory center in regard to this matter failed to perform its responsibilities. The part about whether this is surgery or not, that of course comes from Dr. Rosner, the neurosurgeon that indicated this most certainly is neurosurgery. Most importantly, in the joint appendix, what evidence was put in with respect to the prior training of Dr. Noto? Dr. Noto's prior training included a fellowship in physical medicine rehabilitation and one in joint and spine where he assisted, did not perform directly procedures. He performed procedures as an assistant in an orthopedic spine practice. He was never a resident or fellow in an orthopedic or neurosurgical spine fellowship or residency. How many other times had he done this particular procedure slash surgery? He had only performed, this was actually the first one he was performing without anybody else involved, meaning that the other procedures were the ones where Dr. Allo was monitoring or supervising him. My last and final statement is, if you simply look at the joint appendix at 45, the district court said, I don't disagree that there's a surgery out there at all that you could hold a surgical center in. I completely am in accord with you. His report doesn't do it. So once again, I finish with the district court was overly focused purely on what was contained in the report, which even in the report has a why, a where, and a therefore. Do you know if it's standard practice to have a medical device manufacturer rep in the OR or in these ambulatory surge center when this procedure is done? This procedure or any procedures because I have to distinguish my answer then. I would probably say this procedure. I'll start with that. Okay. In this procedure, I do not know. But again, the neuromonitoring individual and the neuromonitoring person in the room were arranged by North American Spine who arranged the whole procedure. And the answer to your other question, which I guess you weren't completely asking is, I happen to know that yes, when it does come to knees, hips, et cetera, the people are in the room. Especially if you have a device maker, you want that person there. They're doing the measurements. I have a right hip myself and I can tell you there was somebody in the room to determine they were putting the right size. Those people are considered very valuable. Yes, they are. They pay quite well. Thank you. If there are no further questions. They're not counsel, but before we adjourn, maybe see you at sidebar, please. Certainly both of you. All right. Thank you counsel for the excellent argument. We'll take the matter under advisement.